360 A.2d 603
**ADOPTION OF Patricia Jeanine WALKER.**
**Appeal of Robert Lee WALKER.**

Supreme Court of Pennsylvania.

Argued May 4, 1976.

Decided July 6, 1976.

166

John F. Pyfer, Jr., Lancaster, Kent H. Patterson, Harrisburg, Frank C. Chesters, Lancaster, for appellant.

John J. Krafsig, Jr., Harrisburg, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This case involves two issues: (1) Is the natural father's consent or a finding of abandonment or neglect a necessary prerequisite for adoption of his out-of-wedlock child? and (2) Was the mailed but undelivered notice of the adoption hearing sent to the natural father adequate to cure the failure to present any evidence to support the termination of his parental rights to the child?

Appellant is the natural father of a child born out of wedlock in December 1970 while he and the mother were living together. The parents separated thereafter and a formal support agreement was executed in November 1972. In April 1973 appellant initiated a habeas corpus proceeding to enforce his visitation rights under the support agreement. In May 1973 the visitation provisions of the support agreement were superseded by a court ordered visitation schedule, which, inter alia, provided weekly visitation rights. Appellant has made all support payments as required by the agreement and has fully exercised his visitation rights.

The natural mother of appellant's child married in November 1973. On May 7, 1974, her husband filed a petition for the adoption of appellant's child. The mother joined the petition. The orphans' court directed that appellant be given notice of the hearing on the petition, scheduled for May 23, 1974, by registered or certified letter sent to his last known address. Such notice was sent May 9, 1974, to an address appellant had supplied the

Domestic Relations Division of Dauphin County. The letter was returned, marked "Moved, left no address." Although it was stipulated that appellant visited his child twice during the period from May 9 to May 23, no further attempt to give him notice of the hearing was made.

At the May 23 hearing, counsel for the mother's husband introduced the envelope marked as noted above as evidence of his inability to give appellant notice of the hearing. The hearing proceeded in appellant's absence. No testimony was offered to support termination of appellant's parental rights. On June 4, 1974, the orphans' court entered the decree of adoption.

On June 8, 1974, when appellant arrived at the mother's home for his regular weekly visit with his child, she handed him an envelope which contained a copy of the decree of adoption. On July 26, 1974, in the orphans' court which decreed the adoption, he filed an application for a rule to show cause why the adoption should not be reversed and "remanded" for a new hearing. The rule was issued on the day it was filed. Following an answer to the rule, appellant, on December 12, 1974, filed a petition to reopen the decree of adoption. A hearing on both the rule and the petition was held on February 18, 1975. The facts established by the pleadings and an oral stipulation made part of the record at the hearing were: (1) appellant did not have actual notice of the May 23, 1974 hearing on the petition for adoption, (2) the only attempt made to notify appellant of the hearing was the letter mailed to the address obtained from the Domestic Relations Division, (3) appellant was visiting his child each week during this entire period as permitted by the court ordered visitation schedule, and (4) appellant had not consented to the adoption. Following the hearing, the rule to show cause was discharged.[1] In an opinion

1. The petition to reopen the adoption proceeding, though not mentioned in the orphans' court opinion or decree, was apparently decided at the same time.

filed August 4, 1975, the orphans' court held that, under Pennsylvania law, appellant was not entitled to notice of the adoption proceeding and that the mailed notice satisfied any right to notice that he may have had.

Appellant appealed the orphans' court decree directly [2] to this Court, challenging the procedural and substantive discrimination against unwed fathers in the Adoption Act [3] and the adequacy of the attempt to serve notice in this case.[4] Finding merit to each of appellant's arguments, we vacate the decree and remand with directions.

Section 411 of the Adoption Act provides:

"In the case of an illegitimate child, the consent [to adoption] of the mother only shall be necessary." [5]

This consent provision has two subsidiary effects. First, as a consequence of section 421 of the Act,[6] notice of an adoption proceeding need only be given to those persons whose consent to adoption are needed but not yet obtained. Because the consent to adoption of the unwed father is not required by the statute, he need not be given notice of the adoption proceeding. Second, under sec-

2. We hear this case under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1975).

3. Act of July 24, 1970, P.L. 620, §§ 101 et seq., 1 P.S. §§ 101 et seq. (Supp.1975).

4. All issues raised before this Court were briefed and presented to the orphans' court on the rule to show cause.

5. Act of July 24, 1970, P.L. 620, art. IV, § 411, 1 P.S. § 411 (Supp.1975).

6. "Notice [of a hearing on an adoption] shall be given to all persons whose required consent has not been obtained . . . ."
   Id. § 421, 1 P.S. § 421.

tion 414 of the Act,[7] if a parental consent to adoption is needed and has not been obtained, the adoption can proceed only if the consent is obtained or if there is a basis upon which the parental rights of the nonconsenting parent can be involuntarily terminated. Because, under the statute, the unwed father's consent need not be obtained, the court may terminate his parental interest without regard to the strict standards which otherwise obtain when parental rights are to be involuntarily terminated.[8] Thus, section 411 of the Act, denies unwed fathers important substantive and procedural rights because his consent to adoption is not statutorily required.

This distinction between unwed mothers and unwed fathers is patently invalid under the Pennsylvania Constitution. Article I, section 28 of the Constitution provides that:

> "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

It is clear that, as a consequence of section 411, unwed fathers have no rights under the Adoption Act, while

7. "When parental rights have not previously been terminated, the court may find that consent of a parent of the adoptee is not required if, after hearing as prescribed in section 313, the court finds that grounds exist for involuntary termination under section 311."

Id. § 414, 1 P.S. § 414.

8. Section 311 of the Adoption Act, id. art. III, § 311, 1 P.S. § 311, provides:

"The rights of a parent in regard to a child may be terminated . . . on the ground that:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties; or

(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent . . . ."

unwed mothers have all the rights of married parents. The only differences between unwed fathers and unwed mothers are those based on sex. This is an impermissible basis for denying unwed fathers rights under the Act. Section 411 of the Adoption Act, which makes the impermissible distinction, violates article I, section 28 of the Constitution[9] and, as a result, the offending portions[10] thereof must be struck down.[11]

9. The purpose and effect of article I, section 28, have been described as follows:

"That the purpose of this constitutional provision was to end discriminatory treatment on account of sex is clear. . . . In this Commonwealth, sex may no longer be accepted as an exclusive classifying tool. In the recent past, we have unhesitatingly accepted the mandate of article I, section [28] . . . . We will not hesitate here."

Commonwealth v. Butler, 458 Pa. 289, 296, 328 A.2d 851, 855 (1974). See also, DiFlorido v. DiFlorido, 459 Pa. 641, 331 A.2d 174 (1975). (presumption that husband owns household goods used by both spouses must fall in face of article I, section 28 of the Pennsylvania Constitution); Conway v. Dana, 456 Pa. 536, 318 A.2d 324 (1974) (presumption that father must bear principal burden of supporting his children must fall in face of article I, section 28 of the Pennsylvania Constitution).

10. Section 103 of the Act, Act of July 24, 1970, P.L. 620, art. I § 103, 1 P.S. § 103 (Supp.1975), provides:

"If any provision of this act . . . is held invalid, the remainder of this act . . . shall not be affected thereby, and to this end the provisions of this act are declared to be severable."

We therefore may strike down the invalid portions of the Act without affecting the remainder. The portions of section 411 which offend article I, section 28, are:

"In the case of an illegitimate child, the consent of the mother only shall be necessary. The consent of the natural father of a child who was illegitimate at birth shall be required only if the relationship between mother and child was terminated by a decree entered after the marriage of the mother and the natural father."

11. Federal constitutional law compels the same result we reach on the basis of the Pennsylvania Constitution. In Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the United States Supreme Court held "that, as a matter of due process of law, [an unmarried father] was entitled to a hearing on his fitness as a parent before his children were taken from him and that, by denying [an unwed father] a hearing and extending it to all other parents whose custody of their children is challenged, the State denied [the unwed father] the equal protection of the

Appellee argues that the mailed notice sent appellant[12] cured any deficiency in the adoption proceeding insofar as appellant's rights were concerned. We disagree.

First, regardless whether appellant received notice of the hearing, the trial court was presented with no evidence upon which his parental rights could be terminated. No attempt was made to comply with section 414 of the Act.

■ Sending notice of an adoption proceeding to the unwed mother of the prospective adoptee does not relieve the moving party of the burden of presenting evidence sufficient to terminate her parental rights under section 311 when her consent has not been obtained. See Adoption Act, Act of July 24, 1970, P.L. 630, art. IV, § 414, P.S. § 414 (Supp.1975). There is no valid basis for imposing a lighter burden on the moving party when the person whose rights are to be terminated is an unwed father, rather than an unwed mother.

■ Moreover, we utterly reject the contention that the notice provided in this case was effective. The orphans' court directed appellee to mail notice of the adoption hearing to appellant. Appellee mailed the notice to

laws guaranteed by the Fourteenth Amendment." Id. at 649, 92 S.Ct. at 1211. Although it is possible factually to distinguish *Stanley* from this case, we are not persuaded that any of the differences would compel a contrary result here. Cf. *In re Watson,* 450 Pa. 579, 301 A.2d 861 (1973) (case remanded to consider impact of *Stanley* on orphans' court decree).

12. The orphans' court is given authority to order this notice sent under section 421 of the Act, Act of July 24, 1970, P.L. 620, art. IV, § 421, 1 P.S. § 421 (Supp.1975), which provides:

"Notice [of a hearing in an adoption] shall be given to all persons whose required consent has not been obtained and to such other persons as the court shall direct. . . . Notice shall be by personal service or by registered or certified mail to the last known address of the person to be notified or in such other manner as the court shall direct."

an address which appellant had given to the Domestic Relations Division. This notice, marked "Moved, left no address," was presented to the court as evidence of appellee's inability to provide appellant notice of the hearing. Appellee failed to tell the court that appellant came to his home every week to visit his child and that appellant could easily have been personally served with notice of the hearing. In fact, appellee's wife handed a copy of the final decree of adoption to appellant, just four days after it was entered, when appellant arrived at appellee's house for the regular visit with his child. There is no reason why notice of the hearing could not have been given in the same manner or why appellant could not, at least, have been told of the hearing.

Alternatively, when appellant arrived at appellee's house for his regular visit with his child, appellee could have asked him for his current address. Service by mail at the last known address implies a good faith effort to discover the correct address. See 2 Goodrich-Amran, Standard Pennsylvania Practice § 2080–10. On this record, in which appellee knew that the address he had was not current and had the means to obtain the correct address easily, we find no evidence of the required good faith.

One cannot rely on mailed notice which clearly did not reach the party to be notified when some other form of service which will be effective can easily be used or the actual address at which the party may be found is readily available.[13]

13. As the Court of Common Pleas of Montgomery County observed:
"[D]ue process, expedition of court business, and courtesy all require notice to opposing counsel when pleadings are filed. Advocates must never become so engrossed with their advocacy that they overlook the fundamentals of fairness."
*Tizer v. Tizer*, 92 Montg.Co.Rep. 384 (1970).

174

Decree of adoption vacated, case remanded for a hearing in conformity with this opinion.

JONES, C. J., did not participate in the consideration or decision of this case.

POMEROY and NIX, JJ., concur in the result.